FILED

2020 Nov-09 PM 02:56
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **JEREMIAH VANHORN**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **7:19-cv-00528-AKK** |
| | ) | |
| **ANDREW SAUL, Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Jeremiah VanHorn brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Among other things, VanHorn contends that the Administrative Law Judge ("ALJ") who issued the decision lacked authority to decide his claim because she was not properly appointed pursuant to the Appointments Clause of the Constitution. Doc. 1 at 4. The Commissioner moves for judgment on the pleadings on VanHorn's claim that the ALJ lacked authority to issue her decision, arguing that VanHorn waived the claim by failing to raise it during the administrative process. Doc. 9. After careful review, this court finds that the Commissioner's motion for judgment on the pleadings is due to be granted and that substantial evidence supports the ALJ's decision. Therefore, the decision denying benefits is due to be affirmed.

## I.

VanHorn worked as a security guard and correctional officer before he stopped working at age forty due to his alleged disability. *See* R. 72, 184. Thereafter, VanHorn filed applications for a period of disability and disability insurance benefits and supplemental security income, alleging a disability onset date of October 11, 2015, due to impairments from heart disease and sleep apnea. R. 156-166. The SSA denied VanHorn's applications, R. 86, and VanHorn requested a hearing before an ALJ, R. 93. Following the hearing, the ALJ issued a decision denying VanHorn's claim. R. 7-19. Subsequently, the Appeals Council ("AC") denied VanHorn's request for review, rendering the ALJ's opinion the final decision of the Commissioner. R. 1, 152; *see* 42 U.S.C. § 405(g). After the AC denied VanHorn's request, he submitted a letter to the Council requesting that it reconsider its decision or grant him a new hearing because the ALJ who conducted his hearing was not properly appointed based on the Supreme Court's decision in *Lucia v. S.E.C.*, 248 S. Ct. 2044 (2018). Doc. 11-1 at 1-3. The AC did not respond, *see* doc. 14 at 5, and VanHorn now seeks review in this court, doc. 1.

## II.

Before addressing the merits of VanHorn's appeal, the court turns to his contention that the ALJ was not properly appointed in violation of the Appointments Clause of Article II of the Constitution, and, therefore, he is entitled to a new hearing

before a properly appointed ALJ. *See* doc. 1 at 4. "The Appointments Clause requires that 'Officers of the United States' be appointed by the President, a court of law, or a head of a department.'" *Pharmacy Doctors Enterprises, Inc. v. Drug Enforcement Admin.*, 789 F. App'x 724, 727-28 (11th Cir. 2019) (citing U.S. Const., art. II, § 2, cl.2). In *Lucia v. S.E.C.*, the Supreme Court held that ALJs of the Securities and Exchange Commission qualify as "Officers" within the meaning of the Appointments Clause in part because the "ALJs issue decisions containing factual findings, legal conclusions, and appropriate remedies" that may become the final decision of the SEC if the Commission declines review. 138 S. Ct. at 2049, 2053-54. The Court further held that a party "'who makes a <u>timely</u> challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief'" in the form of "a new 'hearing before a properly appointed' official." *Id.* at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182-83, 188 (1995)) (emphasis added).

*Lucia* does not address whether the SSA's ALJs are also officers for purposes of the Appointments Clause, but the Commissioner does not dispute that the ALJ here was acting as an officer and subject to the requirements of the Appointments Clause. Doc. 9 at 6, n.6. And, within a month of the decision in *Lucia*, and after the ALJ issued her decision in this case, the then Acting Commissioner of the SSA ratified the appointment of the SSA's ALJs and approved those appointments as her

3

own to address any potential Appointments Clause issues. *See* SSR 19-1p, 84 Fed. Reg. 9582-02, 9583 (effective March 15, 2019). Thus, the court assumes that the ALJ in VanHorn's claim was an officer within the meaning of the Appointments Clause and that she had not been properly appointed prior to her decision denying VanHorn's claim. Consequently, VanHorn is entitled to a new hearing if he has not waived his claim challenging the ALJ's appointment.

"[A]rguments based on the Appointments Clause are nonjurisdictional and therefore subject to the ordinary rules of forfeiture . . . ." *Pharmacy Doctors Enterprises*, 789 F. App'x at 728; *see also Freytag v. Comm'r of Internal Rev.*, 501 U.S. 868, 878 (1991). Thus, generally, a party seeking to challenge the appointment of the administrative official or ALJ deciding his case must raise the issue "while his case was pending before that court on direct review." *Ryder*, 515 U.S. at 180-82. In keeping with that general rule, the vast majority of courts that have considered the issue have held that a social security claimant waives an Appointments Clause challenge to an ALJ's decision if he fails to raise the issue at the administrative level.[1] And, although the Eleventh Circuit has not yet addressed the issue in the

---

[1] *See Carr v. Comm'r, SSA* , 961 F.3d 1267 (10th Cir. 2020); *Davis v. Comm'r of Soc. Sec.*, 963 F.3d 790 (8th Cir. 2020); *Gagliardi v. Soc. Sec. Admin.*, 441 F. Supp. 3d 1284 (S.D. Fla. 2020), *appeal filed*, No. 20-10858 (11th Cir. Mar. 2, 2020); *Jones v. Berryhill*, 2019 WL 2583157, *7-8 (N.D. Fla. June 21, 2019); *Burr v. Comm'r of Soc. Sec.*, 2019 WL 3821572, *2 (M.D. Fla. May 17, 2019); *Perez v. Berryhill*, 2019 WL 1405642 (S.D. Fla. May 28, 2019), *appeal filed sub nom Perez v. Comm'r of Soc. Sec.*, No. 19-11660 (11th Cir. Apr. 29, 2019); *Lopez v. Berryhill*, 2019 WL 1429632 (S.D. Fla. Mar. 29, 2019), *appeal filed sub nom Lopez v. Acting Comm'r of Soc. Sec. Admin.*, No. 19-11747 (11th Cir. May 3, 2019); *Abbington v. Berryhill*, 2018 WL 6571208, at *7

social security context,[2] it has found in a different context that a petitioner waived his Appointments Clause claim by not raising it in administrative proceedings.  *See Pharmacy Doctors*, 789 F. App'x at 727-29 (citation omitted).

VanHorn urges the court to hold that he did not waive the claim, contending that (1) he raised the claim before the SSA; (2) he can properly raise the claim for the first time in the district court; and (3) even if he did not timely raise his claim in the administrative proceeding, that failure is excused under *Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868 (1991).  Doc. 11.  For the reasons explained below, the court respectfully disagrees with VanHorn's contentions and finds that he has waived his claim challenging the appointment of the ALJ.

## A.

To begin, as to VanHorn's contention that he asserted his Appointments Clause claim during the administrative proceedings in the SSA, VanHorn raised the claim <u>after</u> the AC denied review and the ALJ's decision denying benefits became the final decision of the Commissioner.  *See* doc. 11-1; R. 1; 42 U.S.C. § 405(g).

---

(S.D. Ala. Dec. 13, 2018); *Perkins v. Berryhill*, 2019 WL 2997082, *2 (N.D. Tex. June 21, 2019), *report and recommendation adopted*, 2019 WL 2996055 (N.D. Tex. July 9, 2019); *McMorris v. Comm'r of Soc. Sec.*, 2019 WL 2897123, at *10 (W.D. N.Y. June 26, 2019); doc. 9 at 11-14 (citing cases).  *But see Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537 (6th Cir. 2020); *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3rd Cir. 2020).

[2] The issue is currently before the Circuit in three cases on appeal from the Southern District of Florida.  *See Gagliardi*, 441 F. Supp. 3d 1284; *Lopez*, 2019 WL 1429632; *Perez*, 2019 WL 1405642.

And, nothing suggests that VanHorn asked the SSA to reopen his case. *See* doc. 11-1 at 2. Thus, VanHorn did not raise a timely challenge to the validity of the ALJ's appointment during the administrative proceedings.

**B.**

Next, VanHorn argues that, based on *Sims v. Apfel*, 530 U.S. 103 (2000), he may raise his Appointments Clause claim for the first time in this court. Doc. 11 at 8-9. In *Sims*, the Supreme Court held that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the [AC] in order to preserve judicial review of those issues," but it did not address "[w]hether a claimant must exhaust issues before the ALJ." 530 U.S. at 107, 112. In a footnote, the Eleventh Circuit interpreted *Sims* as holding "that a Social Security claimant's failure to raise an issue at the administrative level does not deprive a court of jurisdiction to consider the issue when it is raised for the first time during judicial proceedings." *Loudermilk v. Barnhart*, 290 F.3d 1265, n.1 (11th Cir. 2002).

But, contrary to VanHorn's suggestion otherwise, *Loudermilk* does not stand for the proposition that a Social Security claimant never waives a claim by failing to raise it in the administrative proceeding. And, after deciding *Loudermilk*, the Eleventh Circuit has held on at least two occasions, albeit in unpublished opinions, that a claimant waived an issue or claim by failing to raise it in the administrative proceedings. *See Sullivan v. Comm'r of Soc. Sec.*, 694 F. App'x 670, 672 (11th Cir.

6

2017); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009-10 (11th Cir. 2020). Thus, *Loudermilk* and *Sims* do not mandate a conclusion that a social security claimant can raise an Appointments Clause challenge for the first time in the district court.  As a result, in light of the SSA's interest in having such challenges brought in a timely fashion[3] and its requirement that a claimant raise objections to the ALJ at the "earliest opportunity," 20 C.F.R. § 404.940, the court joins the majority of other courts that have addressed the issue and finds that a social security claimant waives an Appointments Clause challenge to an ALJ's decision if he fails to raise the issue while his case is pending at the administrative level.

## C.

Finally, VanHorn contends that his failure to raise the Appointments Clause claim during the administrative proceedings is excusable under *Freytag v. Commissioner*, 501 U.S. 868 (1991).[4]  In *Freytag* the Supreme Court reviewed a

---

[3] The SSA "receive[s] millions of applications for benefits each year," "issues hundreds of thousands of decisions each year," and "must make decisions efficiently in order to ensure that the system continues to work and serve the American people."  SSR 19-1p, 84 Fed. Reg. 9582-02, 9583.  Thus, Appointments Clause challenges based on *Lucia*, which could lead to new hearings for claimants before different ALJs, could "significantly affect" the SSA's hearings and appeals process.  *See id.*

[4] VanHorn also contends that his failure to raise the claim should be excused because it would have been futile for him to do so, and cites *Oliver v. Coca-Cola Co.*, 497 F.3d 1181 (11th 2007), *vacated in part on other grounds*, 506 F.3d 136, to support that contention.  Doc. 11 at 10-11.  In *Oliver*, however, the Eleventh Circuit addressed only exhaustion of administrative remedies in the context of ERISA claims, and "the decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision . . . ." 497 F.3d at 1200.  And, VanHorn has not cited authority supporting the futility exemption in the context of social security proceedings.

challenge to the appointment of the Tax Court's Special Trial Judge that the petitioner had not raised in the Tax Court, finding that the case was "one of those rare cases in which [the Court] should exercise [its] discretion to hear [a] challenge" that was not presented in the proceedings below.  501 U.S. at 779.  But, VanHorn has not shown that this is a "rare" case that warrants excusing his failure to raise the challenge in the proceedings below.  *See Abbington*, 2018 WL 6571208, at *7 (declining to apply *Freytag* to excuse the plaintiff's failure to raise his Appointments Clause claim before the SSA); *Gagliardi*, 441 F. Supp. 3d at 1292 (same) (citation omitted).

And, as at least two courts in the Circuit have recognized, the Court's decision in *Lucia* "did not create any new constitutional rules or standards . . . ."  *Burr v. Comm'r of Soc. Sec.*, 2019 WL 2821572, at * 2 (M.D. Fla. May 17, 2019); *Abbington*, 2018 WL 6571208, at *7.  In other words, the substantive law of the Appointments Clause did not change during the pendency of VanHorn's claims, and he could have raised the issue while his claims were pending before the SSA.  In fact, the Court issued its opinion in *Lucia* more than six months before the AC denied VanHorn's request for review.  *See* 248 S. Ct. 2044; R. 1.  VanHorn, who was represented by an attorney, had plenty of time to raise his claim challenging the appointment of the ALJ before the AC issued the decision in his case.  Instead, he waited until sixty days after the AC denied review to raise the issue.  *See* doc. 11-1;

R. 1.  Thus, contrary to his contention otherwise, VanHorn did not raise his *Lucia* arguments challenging the appointment of the ALJ "at the earliest opportunity . . . ." *See* doc. 11 at 10.  In that regard, this case is distinguishable from cases VanHorn cites to support his contention that the court should allow him to raise his claim challenging the ALJ's appointment for the first time in this court.[5]  Finally, to allow VanHorn to raise this issue now when he had every opportunity to do so earlier would encourage gamesmanship.   As Judge Nelson aptly put it, "[r]egularly permitting unsuccessful claimants to raise Appointments Clause challenges for the first time on judicial review, especially when the arguments underlying those challenges were available at the administrative level, would 'encourage the practice of sandbagging: suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error.'"  *Abbington*, 2018 WL 6571208, at

---

[5] *See Cirko*, 948 F.3d at 152 (noting that "[w]hen *Lucia* was decided, Appellees here were already in the process of challenging the SSA's denial of their claims in the District Court"); *Culclasure v. Comm'r of Soc. Sec. Admin.*, 375 F. Supp. 3d 559, 561 (E.D. Pa. 2019) (noting that the AC denied the petitioner's request for review on March 14, 2018—approximately three months before *Lucia*—and the petitioner raised his appointments Clause contentions in a brief filed less than two months after *Lucia*); *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349 (E.D. N.C. 2019) (noting that the petitioner filed her appeal in the district court in March 2018); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 419 (M.D. Pa. 2019) (noting that the petitioner filed his appeal in January 2018); *Kellett v. Berryhill*, 2019 WL 2339968, at *5 (E.D. Pa. June 3, 2019) (noting that the petitioner's "administrative litigation of his case was concluded before *Lucia* was decided" and that he "raised his Appointments Clause objection at the 'earliest possible opportunity' after *Lucia* was decided"); *Wilson v. Berryhill*, 379 F. Supp. 3d 381, 385 (E.D. Pa. 2019) (same).

*7 (quoting *Freytag*, 501 U.S. at 895 (Scalia, J., concurring in part and concurring in the judgment)) (alteration in original).

Because he waived the claim by not raising it while his claim was pending before the SSA, VanHorn's claim challenging the appointment of the ALJ fails as a matter of law.   Consequently, the Commissioner's motion for judgment on the pleadings as to that claim is due to be granted, and the court turns to the merits of VanHorn's appeal.

## III.

In addressing the merits of VanHorn's appeal, the issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997), and whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).   42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"   *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Id.* (quoting *Bloodsworth*, *v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (other citations omitted).

The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth*, 703 F.2d at 239). "Indeed, 'even if the evidence preponderates against the Commissioner's findings, [the court] must affirm if the decision reached is supported by substantial evidence.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Crawford*, 363 F.3d at 1158-59). While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

**IV.**

An individual applying for disability benefits bears the burden of proving that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To qualify, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A). Further, the impairments must be so severe that the claimant "cannot, considering [ . . . ] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. § 423(d)(2)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis.  20 C.F.R. §§ 404.1520(a)–(f).  Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the SSA;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. §§ 416.920(a)–(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## V.

Here, the ALJ performed the five-step analysis and determined that VanHorn satisfies Step One because he had not engaged in any substantial gainful activity since October 11, 2015, the alleged onset date.  R. 12.  At Step Two, the ALJ found that VanHorn has the severe impairment of coronary artery disease with stenting.  R. 12.  The ALJ then proceeded to Step Three, finding that VanHorn did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."  R 13.

The ALJ then concluded that VanHorn has the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with certain limitations related to "occasionally climb[ing] ramps and/or stairs, . . . occasionally stoop[ing] or crouch[ing]," and "occasional exposure" to weather extremes.  R. 13.  Based on this RFC, and relying on the testimony of a vocational expert ("VE"), the ALJ determined at Step Four that VanHorn could not perform any of his relevant past work. R. 17. The ALJ then proceeded to Step Five, where based on VanHorn's age, education, work experience, RFC, and the VE's testimony, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [VanHorn] can perform," including assembler and inspector. R. 18. Accordingly, the ALJ found that VanHorn "has not been under a disability,

as defined in the Social Security Act," from the alleged disability onset date through the date of her decision.  R. 19.

## VI.

VanHorn contends that substantial evidence does not support the ALJ's decision and the ALJ did not apply the correct legal standards in reaching her decision.  Doc. 14 at 6.  Allegedly, substantial evidence does not support the ALJ's findings that VanHorn's health improved after October 2015 and that his activities of daily living are inconsistent with the alleged severity of his symptoms.  *Id.*  Also, VanHorn contends that the ALJ erred by discounting the opinion of an examining physician and by holding VanHorn's poverty against him.  *Id.*

## A.

VanHorn first asserts that the ALJ ignored parts of his medical records in reaching her findings that his health improved significantly after a cardiac catherization in October 2015.  Doc. 14 at 6-9.  Allegedly, the ALJ focused only on evidence supporting her opinion and ignored conflicting evidence.  *Id.*  An ALJ's decision is not based on substantial evidence if the ALJ selectively relies on only certain aspects of the record while ignoring other parts of the record.  *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).  Instead, the ALJ's "review must take into account and evaluate the record as a whole."  *Id.* (citations omitted).  The ALJ did so in this case.

As the ALJ noted, VanHorn sought treatment from the emergency department at DCH Regional Medical Center for worsening chest pain in July 2013.  R. 14, 260, 284.  At that time, a physician found that VanHorn had "[c]hest pain syndrome compatible with unstable angina and a non-ST-segment elevation myocardial infarction."  R. 262.  VanHorn then had a cardiac catherization that revealed a "totally occluded proximal first obtuse marginal branch which underwent successful revascularization" with stenting.  R. 14, 262, 264, 293, 296.

By April 2015, VanHorn was experiencing chest pain again, and sought treatment from the emergency department for pain that radiated down his left arm with progressive symptoms.  R. 14-15, 325-26.  A resting echocardiogram and stress test were normal, revealed no evidence of myocardial ischemia, and indicated a "[l]ow post-test probability of obstructive coronary artery disease . . . ."  R. 15, 309.  The chest pain continued, and VanHorn had another stress test on October 16, 2015 that was inconclusive because it was stopped due to chest pain VanHorn experienced during the test.  R. 359, 411, 413.  The cardiologist who ordered the test, Dr. Nabeel A. Memon, recommended that VanHorn be directly admitted to the hospital for cardiac catherization, but VanHorn refused and scheduled the catherization for a later time.  R. 359, 413.  Dr. Memon performed the catherization three days later and placed two stents in VanHorn's coronary arteries, which, as the ALJ noted, resulted in zero percent stenosis.  R. 15, 415.  Following the procedure, VanHorn was

discharged in improved condition and with instructions to resume his "usual activity level as tolerated."  R. 422-23.

At a follow-up visit one month later, VanHorn still reported occasional chest pain, but he had no complaints of shortness of breath.  R. 356.  Dr. Memon increased VanHorn's "nitrates to help improve symptoms" and recommended regular exercise. R. 357-58.  After that visit, VanHorn had a Lexiscan stress test on November 30, 2015, during which VanHorn achieved a maximal heart rate of 117 bpm during exercise, representing "65% of the maximal, age-predicted heart rate," and "[c]hest pain did not occur" during the test.  R. 396, 404-05.  The test revealed that VanHorn had a stress ejection fraction of only 34% and had a "small sized mild severity unspecified partially reversible defect consistent with ischemia . . . ."  R. 405.

At a second follow-up visit with Dr. Memon in December 2015, VanHorn reported that he was still experiencing chest pain and had chest pain while lifting 25 pounds.  R. 352.  However, VanHorn relayed that "his chest pain is of a much lesser degree than it was before" and that he had no complaints of chest pain during the visit.  R. 352.  Dr. Memon's treatment notes from that visit refer to the November stress test results that indicated ischemia, but the notes also reflect that Dr. Memon still recommended that VanHorn get regular exercise.  R. 352-54.  At another follow-up visit with Dr. Memon in April 2016, VanHorn reported that he had stopped smoking, was compliant with his medication, and had no cardiac complaints.  R.

16

349.  Dr. Memon's treatment notes from that visit indicate that he continued to recommend regular exercise to VanHorn.  R. 350.  Next, as the ALJ found, an echocardiogram performed one month later revealed that VanHorn had mild hypokinesis and "[g]rade II diastolic dysfunction," but his ejection fraction had increased to 45%.  R. 15, 475-76.  And, a pulmonary function report from June 2016 reflects that VanHorn had a FEV1/FVC percentage of predicted value of 101-102 percent, an FVC value of 70-79 percent, and an FEV1 value of 70-80 percent.  R. 497.

In August 2017, VanHorn had a single-photo emission computerized tomography perfusion scan that indicated "decreased activity at the base of the lateral wall," which was "likely artifactual."  R. 502-03.  The test also revealed a "suggestion of mild global hypokinesia" and "[n]o significant ischemia."  *Id.* Finally, VanHorn had a primary care visit in December 2017, during which he reported moderate intermittent chest pain generally, and no chest pain or shortness of breath on the day of his visit.  R. 505.  At that time, a nurse practitioner prescribed nitroglycerin as needed to treat VanHorn's chest pain.  R. 507.

All of this evidence, which the ALJ considered, *see* R. 15-16, supports her finding that VanHorn's condition improved following his October 2015 cardiac catherization.  Still, VanHorn contends that the ALJ erred by failing to reference or acknowledge his November 2015 stress test that revealed signs of ischemia.  Doc.

14 at 8-9.  But, the ALJ in fact discussed that test in her decision, noting that "a Lexiscan stress test report demonstrated that [VanHorn] had 65 percent of the maximal, age-predicted heart rate [and] revealed mild to moderate global left ventricular hypokinesis with a reduced ejection fraction of 34 percent."  R. 15 (citing to R. 396, 405).  And, while the ALJ did not mention that the test indicated a defect consistent with ischemia, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)) (alteration in original omitted).  Thus, the court finds no error in the ALJ's failure to mention that VanHorn's November 2015 stress test indicated possible ischemia, especially in light of evidence that VanHorn did not experience chest pain during the test and because a more recent stress test revealed no significant ischemia.  *See* R. 16, 404-05, 502-03.

## B.

VanHorn also contends that the ALJ erred in weighing the opinion of Dr. Nicholas Bruce Yelverton, a consultative physician who examined VanHorn in May 2016 and opined that VanHorn "has limitation in walking" and can walk only occasionally in an eight-hour workday.  Doc. 14 at 9-10; R. 478-83.  The ALJ

considered this opinion, but gave it no weight because she found it "is inconsistent with medical evidence of record as well as with Dr. Yelverton's own examination." R. 16. The court finds no error in the ALJ's decision. As an initial matter, an ALJ owes no special deference to the opinion of a one-time consultative examiner. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citation omitted); *Hernandez v. Soc. Sec. Admin., Comm'r*, 761 F. App'x 901, 903 (11th Cir. 2019) (citing *McSwain*, 814 F.2d at 619). Moreover, substantial evidence supports the ALJ's decision to give Dr. Yelverton's opinion no weight. As discussed above and as the ALJ concluded, VanHorn's medical record reveals that his condition improved after October 2015. *See* R. 15-16; section VI(A), *supra*. Indeed, as the ALJ found, Dr. Yelverton's opinion that VanHorn can walk only occasionally is inconsistent with April 2017 and August 2017 tests that respectively show VanHorn's ejection fraction improved to 45 percent and he had no significant ischemia. R. 16, 475-76, 502-03. Finally, as the ALJ noted, Dr. Yelverton's opinion that VanHorn can walk only occasionally is inconsistent with his own findings that VanHorn had no shortness of breath or chest pain during the exam and could walk on his toes and heels, squat to the floor and recover, and ambulate without difficulty or assistive device. R. 482-83. Thus, in light of the substantial deference owed to the Commissioner's decision, *Dyer*, 395 F.3d at 1212, and because the court cannot

reconsider the facts or reweigh the evidence, *Martin*, 894 F.2d at 1529, the court finds that the ALJ did not err by giving no weight to Dr. Yelverton's opinion.

## C.

Next, VanHorn contends that the ALJ erred by finding that his daily activities are inconsistent with his subjective testimony regarding the limiting effects of his symptoms. Doc. 14 at 10-13. Specifically, VanHorn asserts that the ALJ wrongly relied on his alleged ability to mow the lawn to find that the limitations caused by VanHorn's coronary heart disease are not as severe as he described. *Id.* at 11.

Applying the correct legal standard, the ALJ found that VanHorn's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [VanHorn's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." R. 16. In reaching that finding, the ALJ noted that VanHorn reported that "his impairments caused mowing the lawn to take more time." R. 14. Contrary to VanHorn's contention otherwise, that is consistent with VanHorn's self-reported daily activities. In VanHorn's April 2016 function report, he listed mowing as a household chore he is able to do, and he explained that it could take a week for him to mow the yard because he mows for only ten minutes at a time due to fatigue. R. 194. And, VanHorn further indicated in the report that his impairments cause him to "take longer to mow [the] yard." R.

197.  Then, in response to the ALJ's question regarding who does the yard work, VanHorn testified, "My son helps me, does the yard work.  I just kind of give him key pointers.  I'll try to do some things, but I don't do much."  R. 45.

Even if the ALJ did not give sufficient attention to VanHorn's statement that he can only mow for 10 minutes, substantial evidence supports her finding that VanHorn's subjective testimony regarding the limiting effects of his impairment is not entirely consistent with the evidence in the record.  VanHorn testified that due to his impairment, his typical day consists of "[m]ainly just resting and trying to [] stay relaxed and not exert [him]self in any form or fashion."  R. 44.  But, as discussed above, VanHorn's medical records indicate that his condition improved after his October 2015 cardiac catherization.  *See* R. 15-16; section VI(A), *supra*.  In addition, as the ALJ noted, VanHorn testified that Dr. Memon released him to return to light duty work after that procedure.  R. 14, 47.[6]  Moreover, the records reflect that Dr. Memon did not place other restrictions on VanHorn's functioning, recommended regular exercise, and treated VanHorn conservatively after the catherization procedure.  R. 16, 349-58.  Thus, the court finds no reversible error in the ALJ's finding that VanHorn's reported daily activities are not consistent with his subjective testimony and claim regarding the limiting effects of his coronary artery disease.

---

[6] VanHorn further testified that his employer "refused to allow [him] to return to work and placed [him] on FMLA."  R. 47.

**D.**

Finally, VanHorn contends that the ALJ erred by using his poverty against him when she based her decision in part on his lack of medical treatment, his noncompliance with prescribed medications, and the conservative course of treatment.   Doc. 14 at 13-18.   According to VanHorn, the ALJ should have considered his poverty as a reason for those issues.

The ALJ has "an obligation to scrupulously and conscientiously probe into the reasons" for a treatment plan and may not make credibility determinations based on a "failure to seek additional medical treatment" without developing the record as to the reasons for that failure.  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015) (internal quotations omitted) (finding error where "in the absence of additional information regarding [a claimant's] financial ability to seek alternate treatment, the ALJ could not fairly assess the severity of [a claimant's] back pain and potential disability").  And, "[w]hen the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, [the] court will remand for further consideration."  *Id.* (quoting *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)).

Here, the ALJ found as follows:

[S]ubsequent to his 2015 procedure, [VanHorn] generally was treated conservatively, and there is evidence that he was not taking medication other than aspirin [] for significant periods [].  Despite his allegations of frequent chest pains necessitating the use of nitroglycerine,

pharmacy records indicate that the claimant filled his prescription for nitroglycerin in December 2017, but had not done so prior to that since October 2015 [].   Finally, the claimant's allegation that he did not pursue charity treatment because he did not have the gas money for transportation, or that he did not want to use gas because his wife had to work, is inconsistent with the severity of allegedly disabling symptoms.

R. 16; *see also* R. 17.  As VanHorn points out, the ALJ fails to mention or consider any of the evidence showing VanHorn's poverty caused him not to fill prescriptions, take medication, or travel to Birmingham to pursue charity care.  VanHorn's medical records indicate that he did not take medication at times because he was unemployed and could not afford it.  R. 371, 505.  Moreover, VanHorn testified that he had not visited his cardiologist since June 2017 because he did not have insurance or a way to pay.  R. 41-42.  And, although VanHorn's primary care physician referred him to charity care in Birmingham, VanHorn testified that he had no way of travelling to Birmingham due to the gas money required for the trip.  R. 42, 46.  Rather than probing further, the ALJ asked no follow-up questions, *see* R. 46, and assumed that VanHorn would have found the gas money needed to travel approximately 60 miles from his home to Birmingham if his symptoms were as disabling as he contends, R. 16.  But, such an expense is not trivial, and the gas money required to drive 120 miles round-trip for care can be an insurmountable hurdle for an impoverished claimant regardless of the severity of his symptoms.  Thus, the ALJ erred by holding VanHorn's poverty against him.

23

However, the ALJ also noted that the "medical evidence and [VanHorn's] reported activities of daily living are inconsistent with the severity and intensity of allegedly disabling conditions." R. 16. Thus, the ALJ did not rely exclusively, or even primarily, on VanHorn's failure to seek care or take medication or the conservative course of treatment to reach her finding that VanHorn's coronary artery disease was not as disabling as he claimed. And, as discussed above, substantial evidence supports the ALJ's finding. Consequently, the ALJ's failure to consider VanHorn's poverty was harmless error and does not mandate remand for further consideration. *See Henry*, 802 F.3d at 1268

## VII.

Based on the foregoing, the court concludes that substantial evidence supports the ALJ's determination that VanHorn is not disabled, and that the ALJ's failure to consider VanHorn's poverty is harmless error. Therefore, the Commissioner's final decision is due to be affirmed. The court will enter a separate order in accordance with this memorandum opinion.

**DONE** the 9th day of November, 2020.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

24